UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CHARLES BROOKS** | * | **CIVIL ACTION NO. 16-0676** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **GEORGIA PACIFIC, L.L.C. HOURLY PENSION PLAN, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion to dismiss for lack of subject matter jurisdiction [doc. # 30], filed by defendant, Georgia Pacific, L.L.C. Hourly Pension Plan, pursuant to Fed.R.Civ.P. 12(b)(1), 12(c), and 12(h)(3). For reasons detailed below, it is recommended that the motion be DENIED.

### Background

The Georgia Pacific, L.L.C. Hourly Pension Plan ("GP" or the "Plan") is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. *See* Amend. Compl., ¶¶ 1-3; Answer, ¶¶ 1-3. From approximately 2005 until 2015, Charles Brooks received disability benefits as a beneficiary or participant under the Plan. *Id*. In 2015, Brooks reached retirement age, and, according to him, accepted an offer to receive a monthly retirement benefit in the amount of $903.59. (Amend. Compl., ¶¶ 3-6). In the months that followed, however, he failed to receive benefits in the agreed upon amount. *Id*.

Accordingly, on September 29, 2015, Brooks sent a letter to the Koch Retirement

Solutions Center[1] requesting a copy of the benefit plan and an explanation as to why he did not receive the agreed upon monthly retirement benefits. (Amend. Compl., ¶¶ 9-10, Answer, ¶¶ 9-10). On December 1, 2015, Brooks sent Koch Retirement Solutions Center another letter reiterating his request for a copy of the plan and an explanation. *Id*. However, he did not receive a response to either letter. (Amend. Compl., ¶¶ 9-10).

Thus, on March 2, 2016, Brooks filed the instant complaint against GP in the 4th Judicial District Court for the Parish of Morehouse, State of Louisiana. (Compl.). The original complaint sought an order requiring GP to provide Brooks with a copy of the benefit plan and an explanation for his reduced retirement benefits. *Id*. Brooks also asked for penalties of $100 per day pursuant to § 502(c) of ERISA, 29 U.S.C. § 1132(c), plus reasonable attorney's fees. *Id*.

On May 16, 2016, GP removed the case to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (Notice of Removal). On June 6, 2016, GP filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). [doc. # 8]. In response to the motion, Brooks filed an amended complaint that, *inter alia*, joined defendant Koch Industries, Inc., d/b/a Koch Retirement Solutions Center, as the Plan Administrator. (Amend. Compl. [doc. # 19]).[2] Thereafter, GP filed an answer and withdrew its motion to dismiss. *See* doc. #s 22-27.

On February 23, 2017, GP filed the instant motion to dismiss for lack of subject matter

---

[1] Plaintiff posits that the Koch Retirement Solutions Center is the Plan Administrator. (Amend. Compl., ¶ 1).

[2] However, there is no indication in the record that plaintiff ever served Koch Industries, Inc. *See* Notice of Intent to Dismiss [doc. # 37]. Therefore, said defendant is subject to dismissal for failure to prosecute. *Id*.

jurisdiction. Invoking last year's Supreme Court decision in *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547(2016), GP contends that Brooks failed to allege that he suffered a concrete injury sufficient to support standing, thereby depriving the court of Article III jurisdiction. Plaintiff filed his opposition brief on February 28, 2017. [doc. # 34]. GP filed its reply on March 13, 2017. [doc. # 40]. Thus, the matter is ripe.

## Analysis

**I.    Rules 12(b)(1), 12(c), 12(h)(3), or 28 U.S.C. § 1447(c)**

In an apparent abundance of caution (or indecision), GP invoked Rules 12(b)(1), 12(c), and 12(h)(3) in support of its motion to dismiss. As an initial matter, it is manifest that a defect in Article III standing deprives the federal court of subject matter jurisdiction. *Cadle Co. v. Neubauer*, 562 F.3d 369, 374 (5th Cir.2009) (citation omitted). Paradoxically, however, as the party invoking federal jurisdiction in this removed case, GP bears the burden of establishing standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136 (1992). Moreover, if a federal court lacks Article III standing in a case removed from state court, the remedy is not dismissal, but remand. *McAfee, Inc. v. Wilmer, Cutler, Pickering, Hale & Dorr, L.L.P.,* 2008 WL 3852704 (E.D. Tex. Aug. 14, 2008) (citations omitted). Ordinarily, then, lack of standing must be given effect pursuant to 28 U.S.C. § 1447(c), which provides, in pertinent part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

Nonetheless, some courts decline to remand cases for lack of subject matter jurisdiction, when the federal court enjoys exclusive jurisdiction over the cause of action. *See Herman v. Salomon Smith Barney, Inc.*, 266 F. Supp.2d 1208, 1213 (S.D. Cal.2003) (in the absence of

Article III standing, the court dismissed the suit in lieu of remand); *Express Tel. Servs., Inc. v. Sw. Tel. Co., L.P.*, Civ. Action No. 02-1082, 2002 WL 32360295, at *6 (N.D. Tex. Oct. 16, 2002) (where federal courts have exclusive jurisdiction, jurisdiction would never be proper in state court; thus dismissal, not remand, is appropriate). Here, of course, Brooks' cause of action lies exclusively with the district courts of the United States. *See* 29 U.S.C. § 1132(e)(1); *ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir.2013) (ERISA grants federal courts exclusive jurisdiction). Thus, the court finds that if GP were to prevail on its motion, the appropriate remedy is dismissal, not remand.

Furthermore, because the absence of Article III standing deprives the court of subject matter jurisdiction, Rule 12(c), which employs the same standard as a Rule 12(b)(6) motion,[3] is inapplicable. In addition, when subject matter jurisdiction is challenged by a party, it typically is raised via motion filed under Rule 12(b)(1). *Thommassie v. Antill Pipeline Const. Co., Inc.*, Civ. Action No. 12-2750, 2014 WL 2520051, at *2 (E.D. La. June 4, 2014). Conversely, when the court questions subject matter jurisdiction *sua sponte*, it must do so under Rule 12(h)(3). *Williams v. J.B. Hunt Transp., Inc.*, 132 F. Supp.3d 858, 862 (S.D. Tex.2015), *aff'd*, 826 F.3d 806 (5th Cir.2016). Either way, however, dismissal for lack of subject matter jurisdiction is without prejudice. *Ruiz v. Brennan*, ___ F.3d ___, 2017 WL 1032586 (5th Cir. Mar. 16, 2017) (citation omitted).[4]

---

[3] *Gentilello v. Rege*, 627 F.3d 540, 543 (5th Cir.2010).

[4] Albeit, if plaintiff is unable to establish standing, he effectively will have no cause of action.

## II.  Subject Matter Jurisdiction

  a)  General Principles

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). Pursuant to Rule 12(b)(1), "the district court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (citation and internal quotation marks omitted). Furthermore, a district court should dismiss where "it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Venable v. Louisiana Workers' Comp. Corp.*, ___ F.3d ___, 2013 WL 6857992 (5th Cir. Dec. 30, 2013) (citations omitted).

As courts of limited jurisdiction, the federal courts may exercise only that authority bestowed upon them by the Constitution and the Congress. *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981). The United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir.2005) (citing U.S. CONST. ART. III, § 2). To give meaning to the Constitution's "case or controversy" requirement, the courts have developed "justiciability doctrines," – one of which is standing, the principle at issue here. *See United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir.2000); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130 (1992).

Because standing is a necessary component of federal subject matter jurisdiction, it may be raised at any time by a party or the court. *Sample, supra* (citation omitted).

    b)    <u>Standing and *Spokeo*</u>

Standing is comprised of three essential elements. *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (internal citations omitted).

At issue in this case is the injury-in-fact element, which requires plaintiff to show that "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (*citing Lujan*, 504 U.S., at 560, 112 S.Ct. 2130). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*.

The "concrete" requirement is distinct from the "particularized" requirement. *Spokeo, supra*. To be "concrete," the injury must be "*de facto*," that is, it must actually exist. *Id*. "Concrete" injuries can be tangible or intangible. *Id*. Both history and the judgment of Congress play important roles in determining whether an intangible harm constitutes injury in fact. *Id*.[5] Although Congress "may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," that does not mean that a "plaintiff

---

[5] Whilst an injury may be intangible, i.e., incapable of being touched or lacking physical form, *see Black's Law Dictionary* (10th ed. 2014), it still must be present, and not merely conceptual or theoretical. *See Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 530 (5th Cir.2016) ("bare allegation of improper defined-benefit-plan management under ERISA, without concomitant allegations that any defined benefits are even potentially at risk, does not meet the dictates of Article III . . .").

automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. Thus, Article III's injury-in-fact requirement is not satisfied by plaintiff's allegation that he suffered a "bare procedural violation, divorced from any concrete harm." *Id*. On the other hand, in some circumstances, injury in fact may be satisfied where the plaintiff faces the risk of real harm as a result of the violation of a procedural right granted by statute. *See Spokeo, supra*.[6]

c) ERISA's Disclosure Requirement and Plaintiff's "Injury"

ERISA provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated . . ." 29 U.S.C. § 1024(b)(4). Furthermore,

> [a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date

---

[6] In *Spokeo*, the Supreme Court observed that, by enacting the Fair Credit Reporting Act ("FCRA"), Congress clearly sought to curb the dissemination of false information by adopting procedures to decrease the risk. *Spokeo, supra*. However, a violation of one of the FCRA's procedural requirement may result in no harm. *Id*. The Court gave two examples: 1) a consumer agency that fails to provide required notice to a user, but the information is entirely accurate, and 2) a consumer reporting agency provides inaccurate information such as an incorrect zip code, that, without more, proves difficult to imagine how it could work any concrete harm. *Id*.

>of such failure or refusal, and the court may in its discretion order such other
>relief as it deems proper . . .

29 U.S.C. § 1132(c)(1)(B).[7]

Courts have recognized that the purpose of ERISA's disclosure requirements is

>to ensure that participants have "the information necessary to determine [their] eligibility for benefits under the plan, to understand [their] rights under the plan, to identify the persons to whom management of plan funds has been entrusted, and to ascertain the procedures [they] must follow in order to obtain benefits."

*James v. Int'l Painters & Allied Trades Indus. Pension Plan*, 844 F. Supp.2d 131, 156 (D. D.C. 2012) (citation and internal quotation marks omitted).

Also, § 1132(c) does not require the participant to suffer compensatory or monetary damages; rather, frustration, trouble, and expense are pertinent factors for the court to consider when deciding whether to impose a penalty against the administrator. *Davis v. Featherstone*, 97 F.3d 734, 738–39 (4th Cir.1996) (citation omitted).[8]

Here, while plaintiff's complaint, as amended, does not allege any monetary loss stemming from defendants' failure to provide him with the requested information, he does allege that he experienced difficulty identifying the plan administrator. (Amend. Compl., ¶¶ 12-15). Moreover, plaintiff alleges that he did not know whether the Plan had been amended to change the administrator. *Id*. Plaintiff plainly was frustrated by defendants' several month delay in providing him with a copy of the plan. *See Sandlin v. Iron Workers Dist. Council of Tennessee*

---

[7] For violations occurring after July 29, 1997, the maximum amount of the civil monetary penalty under ERISA § 502(c)(1) was increased from $100 to $110 per day. 29 C.F.R. § 2575.502c-1.

[8] The Fifth Circuit has recognized that § 502(c)(1)(B) does not require any showing of damages. *Bannistor v. Ullman*, 287 F.3d 394, 407 (5th Cir.2002). Further, although § 1132 does not require plaintiff to demonstrate prejudice, it remains a factor that the district court may consider in exercising its discretion to assess a penalty. *Godwin v. Sun Life Assur. Co. of Canada*, 980 F.2d 323, 327-329 (5th Cir.1992).

8

*Valley & Vicinity Pension Plan*, 716 F. Supp. 571, 574 (N.D. Ala.1988) (defendants' deliberate and intentional withholding of information understandably caused plaintiff frustration and distress, if not ultimate monetary loss). In fact, Brooks had to incur the expense of counsel to procure a copy of the plan. (Amend. Compl., ¶ 9).

The court also plausibly may infer that defendants' delay retarded plaintiff's efforts to administratively appeal his retirement benefits calculation. *See* Rule 26(f) Joint Case Mgmt. Report [doc. # 28]. Thus, in contrast to other cases where an erstwhile plaintiff seeks statutory damages for the bare transgression of a federal procedural protection divorced from any threat of material harm, Brooks actually required a copy of the plan for purposes of understanding his benefits and rights, which he then *used* (after a several month delay) to administratively appeal the determination.[9]

In short, the court finds that plaintiff's complaint, as amended, sets forth a concrete injury sufficient to establish standing under Article III.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion to dismiss for lack of subject matter jurisdiction

---

[9] In *Spokeo*, the Supreme Court noted that the violation of a statutory procedural right alone, may suffice, in some circumstances, to constitute an injury-in-fact. *Spokeo, supra*. The Court cited two cases for this proposition: *Federal Election Comm'n v. Akins,* 524 U.S. 11, 20–25, 118 S.Ct. 1777 (1998) (confirming that a group of voters' inability to obtain information that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice,* 491 U.S. 440, 449, 109 S.Ct. 2558 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act constitutes a sufficiently distinct injury to provide standing to sue). *Spokeo, supra*. Here, as in *Atkins* and *Public Citizen*, plaintiff's injury is the very harm that the respective statutes were designed to protect.

[doc. # 30] filed by defendant, Georgia Pacific, L.L.C. Hourly Pension Plan, be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 21st day of March 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE